RENDERED: JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0961-ME

E.B. APPELLANT

v. APPEAL FROM KENTON CIRCUIT COURT
HONORABLE TERRI SCHOBORG, JUDGE
ACTION NO. 25-AD-00016

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; J.B.; AND
J.B., A MINOR CHILD APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND CETRULO, JUDGES.

CETRULO, JUDGE: This is an appeal from a judgment terminating the parental

rights of E.B. ("Mother") and J.B. ("Father"). Only Mother appeals. Having

reviewed the record and the rulings below, we affirm the Kenton Family Court.

# BACKGROUND

This action was initiated by the Commonwealth of Kentucky, Cabinet for Health and Family Services ("Cabinet"), upon filing of a petition to involuntarily terminate the biological parents' rights to a child born on July 31, 2023. The Cabinet first became involved when Mother tested positive for methamphetamine while pregnant. Mother remained hospitalized until giving birth to the child who was born premature and had to be placed in neonatal intensive care. The Cabinet discovered that Mother had failed to receive prenatal care and was homeless. Hospital staff reported concerns that Mother was under the influence while visiting the child. Mother and Father were involved in an altercation in the hospital parking lot resulting in the police being called, and Mother was arrested on an active warrant involving drug related charges.

The Cabinet obtained emergency custody and, upon discharge, the child was placed in foster care. In September 2023, the family court continued temporary custody with the Cabinet. Mother was given a case plan to follow which included completion of parenting and substance abuse assessments, submission to random drug screens, supervised visitation, and cooperating with and following recommendations of the Cabinet. In October 2023, Mother stipulated to a finding of neglect. Over the next year, Mother was occasionally homeless, then lived in a sober living shelter, then returned to Father's home in

another county after being discharged from the treatment center. Ultimately, she was involved in a car accident and arrested for driving under the influence. During much of this time, the Cabinet had no contact with Mother.

In February 2025, the Cabinet filed the petition for termination of parental rights. By that time, the child had been in foster care since his discharge from the hospital in September 2023.

In May 2025, the family court held a termination hearing. At that hearing, Mother was present and represented by counsel. She testified she was then receiving services at Brighton Center[1] and working on her case plan. She still needed to resolve a pending criminal case, complete parenting classes, and secure stable housing and employment. She believed she had another three to six months of treatment before she could transition to a sober living facility.

The Cabinet called the social worker, Mikayla Oldham ("SW Oldham"), to testify. SW Oldham testified she had no contact with Mother from September 2024 until February 2025. At that time, she received a report that indicated Mother was hospitalized following a car accident and charged with driving under the influence. SW Oldham then learned that Mother was pregnant and had again tested positive for methamphetamine. SW Oldham testified Mother

---

[1] A community support center located in eight Kentucky counties that provides, among other services, education courses, job placement, financial guidance, and leadership classes.

was now making some progress in her treatment plan, but she was still in the beginning stages of treatment. SW Oldham revealed that neither parent had visited with the child from September 2024 through April 2025. They had not provided care for the child's needs, nor called regularly, nor taken any steps to be involved in the medical treatment of the child. The child has been diagnosed as medically complex due to being born premature, and the foster mother has cared for all his medical needs, which are significant. The foster parents are interested in adopting, and the child is doing well and bonded with them.

In July 2025, the family court entered its findings of fact, conclusions of law, and judgment terminating the parental rights. The court found that the child was abused or neglected as defined by Kentucky Revised Statute ("KRS") 600.020(1); Mother had abandoned the child for a period of not less than 90 days; the parents had failed to provide essential parental care for the child for a period of not less than six (6) months and there was no reasonable expectation of improvement; and the child had been in foster care for 15 of 48 months preceding the filing of the petition. The court concluded it was in the child's best interest to terminate the parental rights of Mother, and this appeal followed.

## ANALYSIS

On appeal, our review of the family court's factual findings is limited to a clearly erroneous standard which focuses on whether its order of termination

-4-

was based on clear and convincing evidence. *Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014) (citing Kentucky Rule of Civil Procedure 52.01). "Pursuant to this standard, an appellate court is obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *Id.* (quoting *Cabinet for Health & Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010)). Factual findings which are supported by substantial evidence of record are not clearly erroneous. *R.M. v. Cabinet for Health & Fam. Servs.*, 620 S.W.3d 32, 37-38 (Ky. 2021). "Substantial evidence is that which is sufficient to induce conviction in the mind of a reasonable person." *Id.* at 37. If the [lower] court's factual findings are not clearly erroneous and the legal conclusions are correct, we are limited to determining whether the [lower] court abused its discretion in applying the law to the facts. *Cabinet for Health & Fam. Servs. v. H.L.O.*, 621 S.W.3d 452, 462 (Ky. 2021) (citations omitted).

KRS 625.090 governs the involuntary termination of parental rights in Kentucky and requires that a termination of parental rights must be based on three findings made by clear and convincing evidence: (1) the child is or has been adjudged abused or neglected as defined in KRS 600.020; (2) termination is in the child's best interest as required by KRS 625.090(1)(b); and (3) the existence of at least one of the conditions of parental unfitness in KRS 625.090(2)(a)-(k).

-5-

On appeal, Mother does not assert that the statutory findings required by the family court were not met. Mother stipulated to a finding of neglect as required under KRS 625.090(1)(a). Mother does not assert that the Cabinet failed to prove one of the grounds of KRS 625.090(2) by clear and convincing evidence. Here, the family court made findings under four sections, although the law requires only one. The evidence revealed that the child had been in foster care for a period of 17 months by the time the petition was filed. *See* KRS 625.090(2)(j). The evidence revealed Mother had no contact with the child for more than 90 days, constituting abandonment. *See* KRS 625.090(2)(a). The court found that Mother had failed to provide any parental care and protection or necessities of life for a period of not less than six (6) months. *See* KRS 625.090(2)(e), (g).

Rather, Mother's only argument on appeal is that the family court abused its discretion in finding termination was in the child's best interest. She argues that the family court should have considered her efforts and recent adjustments under KRS 625.090(3)(d).

The statute provides several factors that are relevant to the court's determination of the best interests of the child. Those factors include:

> (a) Mental illness . . . or an intellectual disability . . . of the parent as certified by a qualified mental health professional, or a disability. . . if the mental illness, intellectual disability, or disability renders the parent consistently unable to care for the immediate and

ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition:

1. Made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court; or

2. Provided a parent with a disability as defined in KRS 199.011 with targeted adaptive and supportive services based on an individual assessment of the parent, or has received a written acknowledgement from the parent knowingly and affirmatively rejecting the offered services;

(d) The efforts and adjustments the parent has made in his or her circumstances, conduct, or conditions to make it in the child's best interest to return the child to his or her home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

KRS 625.090(3)(a)-(f); *T.P. v. Cabinet for Health & Fam. Servs.*, 697 S.W.3d 758, 764-65 (Ky. App. 2024).

Mother asserts it was not in the child's best interest to terminate her parental rights, primarily because she recently made progress and needed more time to make more adjustments to warrant reunification with the child. However, it is clear the family court did consider those efforts, specifically noting that Mother was asking for more time so she could have a chance to be in her child's life. The family court noted that Mother did now appear to be on the right path but she still had no definitive time when she would be ready to parent the child. The court concluded that the hope for continued sobriety and stability on the part of Mother did not override the court's concern that the child should continue to have a safe, stable, and nurturing home which he has had for more than 17 months.

The judgment noted the efforts the Cabinet made to render services to both parents, and there were no further reunification services to be offered which would likely bring about lasting parental adjustment. The family court specifically stated that Mother was again using methamphetamine as recently as January 2025, while she was pregnant. Mother still did not have her own housing or employment and had pending criminal charges. While Mother had recently complied with services, she had a history of failing to maintain progress. Also, there was a well-documented history of domestic violence with Father and a history of substance

abuse on his part, yet Mother testified she would feel safe with the child going to live with Father. These factual findings by the family court are not clearly erroneous. In fact, they are not contested. As our Supreme Court stated in *R.M.*, 620 S.W.3d at 38, the termination of parental rights – including a determination of the best interests of the child – is a particularly fact-sensitive inquiry. As such, appellate courts are disinclined to disturb family court findings, perhaps especially in a case like this where the facts are not seriously disputed.

Having reviewed the record and the applicable statutes, the family court's termination is supported by clear and convincing evidence. The statutory prerequisites were all proven, and the findings and conclusions were all based upon the evidence. The family court did not abuse its discretion in applying the law to these facts. Accordingly, the judgment of the Kenton Family Court is AFFIRMED.

ALL CONCUR.


BRIEF FOR APPELLANT:

Donna M. Bloemer
Covington, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky